**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JERRY CLAY, ) | |
| ) | |
|     *Petitioner*, ) | |
| ) | No. 19 C 6892 |
|     v. ) | |
| ) | Judge Virginia M. Kendall |
| FRANK LAWRENCE, Acting Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
|     *Respondent*. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jerry Clary seeks, pursuant to 28 U.S.C. § 2254, a writ of habeas corpus for alleged violations of his constitutional rights. For the reasons set forth below, his Petition (Dkt. 15) is denied.

**BACKGROUND**

On December 22, 1998, three men entered a currency exchange and then left. (Dkt. 19-1 at 1.) One man re-entered the currency exchange when Terry Madden entered carrying a green bag and $60,000 from an armored truck. (*Id.*) Madden worked for United Armored at the time. (*Id.*) When Madden entered, he was shot and killed by a man who fled in a blue compact car after seizing the bag with cash. (*Id.*) Madden died minutes later. (*Id.*) Although several employees of the exchange saw the shooting, no one could remember much about the shooter's appearance. (*Id.*) Witnesses described the men who entered the exchange only as "male blacks." (*Id.*) Police found a wallet on the sidewalk near the exchange. (*Id.*) Inside, an officer found Petitioner's identification and a temporary permit for a Chevy van registered in the name of Theotis Coleman. (*Id.*)

The officers at the police station traced the address on the registration for the van and set up surveillance near the address. (Dkt. 19-1 at 1.) Around 2:30 p.m., Jerry Clay ("Petitioner") got

1

into a brown car with a woman and a child and left from that address. (*Id*. at 2.) The officers stopped the car, asked Petitioner his name, placed him under arrest, and brought him to the police station. (*Id*.) Later, one of the detectives learned that the Illinois State Police had recovered a United Armored duffel bag from an expressway ramp, which contained straps for money linked to the currency exchange, the victim's lock bag, and a letter addressed to Veronica Clay. (*Id*.)

The officers read Petitioner his *Miranda* rights and he agreed to speak to them. (Dkt. 19-5 at 2–3.) Petitioner had $2,000 in cash on his person at the time of his arrest. (*Id.*) Upon further surveillance of the address where he was arrested, Petitioner's cousin was arrested with $8,000 in cash sewn into his clothing. (*Id.*) After being told that his previous polygraph test indicated deception and that a duffel bag with currency exchange papers and a letter addressed to Veronica Clay had been discovered, Petitioner identified Veronica Clay as his sister. (*Id*. at 2.)

The officers then went to Veronica Clay's residence and entered her apartment without a warrant. (*Id.* at 2, 5.) At the apartment, the officers found keys with tags to the various currency exchange locations and left with the keys. (*Id*. at 3.) When officers interviewed Petitioner again and confronted him with the discovery of the keys, he waived his *Miranda* rights and admitted to his involvement in the robbery as the look-out. (*Id*. at 6, 10.) Petitioner also named the shooter and the getaway driver. (Dkt. 19-1 at 2.)

The trial court denied Petitioner's motion to suppress the arrest for lack of probable cause based primarily on the found wallet with the identification. (*Id.*) The trial court also permitted the prosecution to present evidence of another unsolved armored car robbery that had occurred six months prior to the one at trial. Petitioner and a co-defendant agreed to simultaneous trials. (Dkt. 19-1 at 2.) Separate juries tried Petitioner and a co-defendant in a joint proceeding. (*Id*.) The trial court admitted into evidence Petitioner's oral statements to the police and the cash found on his

2

person. (*Id*.) The court's instructions to the jury included an instruction about legal accountability for acts of another. (*Id*. at 3.) The jury found Petitioner guilty of first-degree murder and armed robbery and sentenced him to concurrent terms of fifty years and thirty years in prison, respectively. (*Id*.)

On appeal, the Illinois Appellate Court found that the police lacked probable cause to arrest Petitioner. (Dkt. 19-1 at 6.) The court remanded the matter to the trial court to determine whether intervening circumstances attenuated Petitioner's oral statements from the illegal arrest. (*Id*. at 7.) On remand for a new trial, the trial court determined that Petitioner's oral statements were sufficiently attenuated from his illegal arrest and were admissible at retrial. (Dkt. 19-5 at 1.) At the retrial on November 17, 2006, a jury again found Petitioner guilty of first-degree murder and armed robbery. (Dkt. 19-11 at 1.) The trial court again sentenced him to concurrent terms of fifty years for first-degree murder and thirty years for armed robbery. (*Id*.)

Petitioner appealed to the Illinois Appellate Court and argued that: (1) his inculpatory statements and the discovery of cash on him were not attenuated from the illegal arrest and should have been suppressed; (2) the prosecution committed misconduct that was prejudicial to Petitioner and denied him of a fair trial; (3) the trial court erred in giving partial jury instructions prior to opening statements; (4) the trial court erred in holding severed but simultaneous trials for Petitioner and a co-defendant; and (5) Petitioner's sentence for first-degree murder was excessive. (Dkt. 19-2 at 2–5.) The Illinois Appellate Court affirmed Petitioner's convictions and sentences. (Dkt. 19-6 at 25–45.) Petitioner subsequently filed a petition for rehearing, which the Appellate Court denied. (*Id*. at 70.)

On May 5, 2015, Petitioner filed a Petition for Leave to Appeal (PLA) with the Illinois Supreme Court. (Dkt. 19-6.) Petitioner argued that: (1) the Illinois Appellate Court created a

3

conflict of law when it ignored its own precedent and held that Petitioner could not challenge the use of illegally obtained evidence to dissipate the taint of the illegal arrest; and (2) the Illinois Appellate Court created a conflict when it directly contradicted its own prior determination that the police engaged in flagrant misconduct. (*Id*. at 12–20.) The Illinois Supreme Court denied the PLA. (*Id*. at 71.)

On April 6, 2016, Petitioner filed a *pro se* petition for state post-conviction relief. (Dkt. 19-8.) Petitioner argued that: (1) the police improperly accepted his waiver of the Fifth Amendment right to counsel; (2) his trial and appellate counsel were ineffective for failing to require the Court to read the accountability jury instruction prior to opening statements; (3) his trial and appellate counsel were ineffective for failing to argue that the police improperly detained Petitioner without receiving a *Gerstein* hearing[1]; and (4) there was inordinate delay in his direct appeal. (*Id*. at 4–11.) On June 21, 2016, Circuit Court of Cook County dismissed the petition. (*Id*. at 12.)

On appeal of the dismissal of his petition, Petitioner's counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).[2] (Dkt. 19-9.) In response to the motion, Petitioner reasserted the claims from his postconviction petition and additionally alleged that: (5) the short statutory deadline for postconviction petitions prevents *pro se* petitioners from investigating claims and presenting complete petitions; (6) trial counsel was ineffective for failing to obtain police misconduct histories for each of the arresting and testifying officers in his case; (7) the trial judge was biased because he used to be a prosecutor "in close proximity to disgraced Chicago Police Commander Jon Burge"; and (8) postconviction appellate counsel was ineffective.

---

[1] A *Gerstein* hearing is a preliminary hearing to determine whether the police had probable cause to arrest someone without a warrant. *See Gerstein v. Pugh*, 420 U.S. 103 (1975).
[2] *Finley* provides that defendants do not have a right to counsel in a collateral appeal. A lawyer appointed to represent a defendant in a collateral appeal may file a *Finley* brief explaining that the lawyer believes the case lacks arguable merit. *Carrion v. Butler*, 835 F.3d 764, 771 (7th Cir. 2016).

(Dkt. 19-10 at 4–13; Dkt. 19-11 at 2–3.) The Illinois Appellate Court granted the motion for Petitioner's counsel to withdraw as counsel and affirmed the judgment of the trial court. (Dkt. 19-11 at 4.)

On December 7, 2018, Petitioner filed an appeal as a matter of right or, in the alternative, leave to appeal in the Supreme Court of Illinois. (Dkt. 19-11. at 5.) Petitioner argued that: (1) the six month filing requirement of the Illinois Post-Conviction Hearing Act is unconstitutional because it deprives Petitioner of due process under the Fourteenth Amendment; (2) the appellate judges erred in refusing to recuse themselves; (3) the appellate court denied Petitioner due process by not explaining why it would not review his motion; (4) neither the circuit court nor the appellate court applied the liberal construction rule; and (5) the trial judge was biased against Petitioner. (*Id*. at 6–16.) The Supreme Court denied the petition. (*Id*. at 17.) The instant Petition followed.

## DISCUSSION

### I. Claim One: Suppression of Oral Statements

In Claim One, Petitioner argues that his oral statements to the police should have been suppressed because the police obtained these statements when he was arrested and detained without probable cause in violation of his Fourth Amendment rights. (Dkt. 15 at 5.) A court may not grant a state prisoner federal habeas corpus relief on the ground that a party obtained evidence introduced at trial through an unconstitutional search and seizure if the state courts provided an opportunity for full and fair litigation of the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976). A full and fair hearing constitutes more than an opportunity to present one's claims to state court. *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013). A state court process that amounts to a sham would not constitute a full and fair hearing. *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003); *Hampton v. Wyant,* 296 F.3d 560, 563–64 (7th Cir. 2002). Courts do

5

not review the underlying court's decision on the merits, but instead evaluate whether there has been a subversion of the hearing process or a failure to apply the appropriate case law. *Cabrera*, 324 F.3d at 531–32; *Hampton,* 296 F.3d at 563–64.

Petitioner had a full and fair hearing on his Fourth Amendment claim. On direct appeal, the appellate court analyzed the facts of the case and found that the police lacked probable cause to arrest Petitioner. (Dkt. 19-1 at 6.) The appellate court then remanded the case to determine whether Petitioner's statements were sufficiently attenuated from the illegal arrest. (*Id*. at 7.) The trial court found that the evidence was sufficiently attenuated and the appellate court affirmed the conviction. (Dkt. 19-6 at 69.) The appellate court did not subvert the hearing process by disregarding the importance of a hearing to determine attenuation. The appellate court remanded the case to the trial court. (*Id*. at 7.) When the appellate court reviewed the decision regarding attenuation, it applied the law and found that the *Brown* factors[3] all weighed in favor of attenuation. (Dkt. 19-6 at 44, 59.) Thus, Petitioner cannot obtain federal habeas corpus relief on this basis because Petitioner has already had a full and fair hearing for his Fourth Amendment claim.

## II.     Fifth Amendment Claims

In Claim Two, Petitioner alleges that the admission at trial of his coerced and fabricated confession violated his Fifth Amendment rights and that the jury convicted him in part based on this confession. (Dkt. 15 at 5.)

Before a state prisoner pursues federal habeas relief, the petitioner must exhaust his remedies in state court in order to give the state system a full and fair opportunity to consider the constitutional objections. *See* 28 U.S.C. § 2254(b)(1)(A); *Johnson v. Pollard*, 559 F.3d 746, 751

---

[3] *Brown v. Illinois*, 422 U.S. 590 (1975) (Courts consider four factors in determining whether a confession was the product of an illegal arrest: (1) the proximity in time between the arrest and the confession, (2) the presence of intervening circumstances, (3) the purpose and flagrancy of police misconduct, (4) whether *Miranda* warnings were given.).

6

(7th Cir. 2009). A habeas petitioner must present his constitutional claims through one full round of state court review, either on direct appeal of his conviction or in post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). A petitioner challenging his conviction in Illinois must have first "appealed to the Illinois Appellate Court and presented the claim in a [PLA] to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). If a petitioner exhausts state court remedies but fails to properly assert his constitutional claims at each level of review, he procedurally defaults on those claims. *See O'Sullivan*, 526 U.S. at 848; *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

Petitioner failed to raise Claim Two in one complete round of state appellate review. Petitioner did not raise the claim regarding the admission of his coerced and fabricated confession in the appellate court or in a PLA to the Supreme Court. (*See* Dkt. 19-2 at 2–5; Dkt. 19-6 at 12–20.) In state postconviction proceedings, Petitioner brought a different Fifth Amendment claim—namely, that the police improperly accepted his waiver of his Fifth Amendment right to counsel. (*See* Dkt. 19-8 at 4–11.) Petitioner procedurally defaulted on Claim Two because Petitioner failed to give the state courts a full and fair opportunity to consider his objection at each level of review.

Petitioner also argues that the trial court violated his due process rights by instructing the jury on accountability prior to opening statements (Claim Four), that the prosecutor's improper statements during closing arguments denied Petitioner a fair trial (Claim Five), that the joint trial with Petitioner's co-defendant violated the Fourteenth Amendment (Claim Six), and that Petitioner's sentence violated the Eighth Amendment (Claim Seven). (Dkt. 15 at 5–6.)[4] The record reflects that Petitioner procedurally defaulted on these claims. Petitioner raised Claims Four, Five,

---

[4] In response to Respondent's brief, Petitioner admitted to procedural default for Claims Four, Five, Six, and Seven. (Dkt. 33 at 5.)

7

Six, and Seven in the Illinois Appellate Court but did not raise them in a PLA to the Supreme Court. (*See* Dkt. 19-6 at 12–20.)[5] Thus, Petitioner procedurally defaulted on Claims Four, Five, Six, and Seven because he failed to present these claims in one full round of state court review.

### III. Miscellaneous Claims: Three, Eight, Nine, Ten, and Eleven

Petitioner also alleges that the trial judge was biased (Claim Three); that Illinois's statutory deadline for filing postconviction petitions violates the Fourteenth Amendment (Claim Eight); that his counsel's decision to include only one issue in the direct appeal PLA constructively denied him his right to counsel (Claim Nine); that trial counsel was ineffective for failing to investigate the police or presenting evidence that the police abused suspects (Claim Ten); and that the trial judge denied Petitioner a timely direct appeal in violation of his due process and equal protection rights (Claim Eleven). (Dkt. 15 at 5–9.)[6] Indeed, Petitioner did not raise Claims Three, Eight, Nine, Ten, and Eleven on direct appeal, nor did he present them in the postconviction petition. (*See* Dkt. 19-2 at 2–5); (Dkt 19-6 at 12–20); (Dkt. 19-8 at 4–11). He also failed to raise Claims Nine, Ten, and Eleven in his postconviction PLA. (*See* Dkt. 19-11 at 6–16.) Although Petitioner raised Claims Three and Eight in his response to his lawyer's *Finley* brief and brought these claims in a PLA to the Supreme Court, a petitioner does not fairly present his federal claim to the state courts when he raises that claim for the first time after his lawyer has filed a motion to withdraw under *Finley*. *See Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004); (*See* Dkt. 19-19 at 4–13; Dkt. 19-11 at 6–16.). Thus, Petitioner procedurally defaulted on Claims Three, Eight, Nine, Ten, and Eleven.

---

[5] In the postconviction petition and appeal, Petitioner focused on the ineffectiveness of counsel for failing to object to the jury accountability instruction before opening statements, which is different from the underlying constitutional claim. (*See* Dkt. 19-8 at 4–11; Dkt. 19-10 at 4–3.)

[6] In response to Respondent's brief, Petitioner concedes that he procedurally defaulted on Claims Three, Eight, Nine, Ten, and Eleven. (Dkt. 33 at 6.)

### IV. Claim Twelve: Inability to Timely Assert Rights

In Claim Twelve, Petitioner argues that (a) the appointment of ineffective counsel; (b) the constructive denial of trial and appellate counsel; (c) inadequate access to legal materials or inmate law clerks; (d) the short 6-month statutory deadline for filing a postconviction petition in light of a complex case; and (e) the loss or destruction of documents by correctional employees caused prejudice and prevented him from asserting his rights in a full and timely manner. (Dkt. 15 at 9.)

Petitioner did not raise Claim Twelve in one full round of state court review, so he procedurally defaulted on this claim. *O'Sullivan*, 526 U.S. at 845; *see Mulero*, 668 F.3d at 536. He did not present claims of appointment of ineffective counsel and constructive denial of trial and appellate counsel in a PLA to the Illinois Supreme Court. (*See* Dkt. 19-8 at 4–1); (Dkt 19-11 at 6–16). Petitioner never raised claims of inadequate access to legal materials or inmate law clerks and the loss or destruction of documents by correctional employees in direct appeal or postconviction proceedings, much less a PLA. (*See* Dkt. 19-2 at 2–5); (Dkt. 19-6 at 12–20); (Dkt. 19-8 at 4–1); (Dkt 19-11 at 6–16). Petitioner did present the claim about the short statutory deadline for filing a postconviction petition in a *Finley* response and in a PLA to the Supreme Court in postconviction proceedings. (*See* Dkt 19-11 at 6–16; Dkt. 19-10 at 4–3; Dkt. 19-11 at 2–3.) But again, a petitioner does not fairly present a federal claim to state courts when he raises that claim for the first time after his lawyer has filed a motion to withdraw under *Finley*. *See Lewis v. Sternes*, 390 F.3d at 1031. Thus, Petitioner procedurally defaulted on Claim Twelve because he failed to assert the claim at every level of state court review.

### V. Exceptions to Procedural Default

A federal court may hear a habeas petitioner's procedurally defaulted claim under two exceptions: (1) if he can demonstrate cause and prejudice for the default, or (2) if he can

9

demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent. *See McQuiggin v. Perkins*, 569 U.S. 383, 391–92 (2013); *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

To show cause and prejudice, Petitioner must show that there was an "'objective factor, external to [Petitioner] that impeded [his] efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical, (2) the factual or legal basis for the claim was not reasonably available to counsel, or (3) ineffective assistance of counsel. *Guest*, 474 F.3d at 930 (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Petitioner suggests cause exists here because correctional employees denied him access to legal resources and destroyed documents but he does not allege when or how this occurred. He does not explain when and what kind of documents the correctional officers destroyed. Moreover, Petitioner does not explain how these impediments would have prevented him from asserting claims in one complete round of state proceedings. Petitioner fails to demonstrate how these vague impediments made it impractical for him to assert his claims in earlier state proceedings.

Petitioner's claim about the short statutory deadline for filing a postconviction petition is equally unavailing. If Petitioner had claims he wanted to assert based on new evidence he discovered after the postconviction petition filing deadline, Illinois law provides a mechanism for asserting such claims. Under 725 ILCS 5/122-1(f), the petitioner may ask the state court for permission to file a successive petition if he can identify an objective factor that impeded his ability to raise the claim in the initial postconviction proceeding and show that his inability to raise the

claim caused him prejudice. Petitioner failed to take advantage of this mechanism, so the filing deadline does not provide good cause for his procedural defaults.

To show a fundamental miscarriage of justice, a petitioner must provide new evidence to support a claim of actual innocence. *McQuiggin*, 569 U.S. 383 at 391–92; *see also Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner does even raise a fundamental miscarriage argument and the court will not make that argument for him. *See Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) ("Franklin . . . does not make this argument and we will not make it for him."). Petitioner has not established a basis for raising defaulted claims before this Court.

## VI. Certificate of Appealability

Petitioner may not appeal the final order on a § 2254 petition unless the Court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a). A court may issue a certificate of appealability only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Petitioner must demonstrate that reasonable jurists would find it debatable whether his Petition states a valid constitutional claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Petitioner had a full and fair hearing of his Fourth Amendment claim, and he procedurally defaulted on his remaining claims. Reasonable jurists would not debate whether to resolve his claims differently. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies the Petition [15] and declines to issue a certificate of appealability.

_____
Virginia M. Kendall
United States District Judge

Date: October 15, 2020